

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

August 14, 2024

<u>Via ECF</u>
The Honorable Dale E. Ho, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re: **Bantsadze v. Burger Man Inc. et al.**
  **1:23-cv-10043-DEH**

Dear Judge Ho:

Our office represents Gvantsa Bantsadze (the "Plaintiff") in the above-referenced matter and we submit this motion jointly with counsel for Burger Man Inc. and Ali Zaarour (collectively, the "Defendants") seeking approval of the Settlement Agreement (attached hereto as **Exhibit 1**) ("the Agreement") as fair and reasonable. The terms of the Agreement were reached at a Court-annexed mediation with all parties present on June 26, 2024.

The parties submit that the terms of the Agreement comport with *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d. Cir. 2015) and provide analysis using the factors articulated in *Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335-336* as a basis for why the Court should approve the Agreement. Separately, Plaintiff's counsel addresses their request for attorneys' fees and their fee arrangement with Plaintiff.

## I.    The Wolinsky Factors

The parties analyze the fairness and reasonableness of the Agreement utilizing the factors articulated in *Wolinsky*:

### 1.  The Plaintiff's range of possible recovery:

#### a.  Plaintiffs' Position

Plaintiff is employed by Defendants at Burger Man Inc. located at 740 7th Avenue, New York, NY 10019, from in or around August 2022 until in or around October 5, 2023, as a food preparer. Plaintiff commenced this action on November 15, 2023 to recover damages resulting from alleged failures to pay the Plaintiff's overtime wages, unpaid wages and spread of hours compensation, in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Laws and state

regulations ("NYLL"). Plaintiff also sought recovery for damages for statutory penalties resulting for WTPA violations under the NYLL for failure to provide the Plaintiff with written wage notices, in English and in Spanish (Plaintiff's primary language) of Plaintiff's regular and overtime rates of pay, regular pay day, and such other information as required by NYLL §195(1), and failure to provide Plaintiff with wage statements upon each payment of wages, as required by NYLL §195(3).

In particular, Plaintiff alleged that she regularly worked 60 hours per week from in or around August 2022 until in or around October 5, 2023, but was paid a flat weekly rate of approximately $600.00 per week for all hours worked and was paid below time-and-a-half the applicable minimum wage rate for her hours worked in excess of 40 each week.

Additionally, Plaintiff alleged that she worked in excess of ten (10) or more hours per day three (3) days a week from in or around August 2022 until in or around October 5, 2023, however, Defendants did not pay her an extra hour at the legally prescribed minimum wage for each day worked over ten (10) hours. Plaintiff further alleged that she was not compensated at all for her three (3) days leave of absence due to work related accident for which the Defendants had agreed to compensate her.

Prior to the parties' Court-annexed mediation in June 2024, Defendants disclosed time and pay records related to Plaintiff's employment. Our office carefully reviewed these documents with the Plaintiff prior to the mediation, who maintained certain disagreements as to the accuracy of the records provided. In general, Defendants' records indicated that Plaintiff worked fewer hours than alleged.

Although Plaintiff maintained that her alleged dates of employment, alleged hours worked per week and alleged rates of pay were correct, Plaintiff acknowledged the sharp factual disputes that existed between the parties on these issues. Based on the information exchanged and confidential discussions held with the Court-annexed mediator, there were *bona fide* factual disputes over the unpaid overtime wages of Plaintiff. As such, we believed that Plaintiff's reasonable range of recovery was between $0.00 and $71,414.29.

Although Plaintiff was confident that she could prevail on all of her claims should this matter have proceeded to trial, Plaintiff's preference was for a guaranteed outcome via Court-approved settlement. Settlement at this juncture avoids the inherent risks and costs of litigation and allows Plaintiff to recover a substantial amount of her alleged unpaid wages claim – a figure strongly disputed by Defendants – in the near future as opposed to the uncertainty of recovery at a much later date in the future.  Based on all of the above, Plaintiff believes that the settlement is a fair and reasonable resolution as to her wage claims.

### b.  The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7

(E.D.N.Y. Oct. 2, 2015) (citation omitted).  "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $18,500.00. The parties believe that this amount is reasonable considering Plaintiff's claims and the defenses and records maintained by Defendants in this matter. Moreover, the settlement amount was only achieved after hours of continued negotiations at a court-annexed mediation before a private mediator. The parties had genuine, bona fide disputes over the hours worked by Plaintiff, the pay received by Plaintiff but both sides negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount. Moreover, the settlement amount falls squarely in the realistic, possible range of settlement and allows Plaintiff to recover a substantial sum of her alleged unpaid wages – a figure strongly contested by Defendants – and takes into account both the risks of obtaining a judgment at trial and whether Plaintiff would be able to collect on any such judgment post-trial.

2.  **The extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing respective claims and defenses":**

The settlement still enables the parties to avoid the anticipated burdens and expenses of formal paper discovery, including exchanging interrogatory and document demands and responses on each other, as well as depositions and a trial. Had the parties not reached a settlement, both sides faced significant time and expenses dedicated to conducting at least two party depositions and an undetermined number of non-party depositions. The parties also would have also likely engaged in pre-trial motion practice. Lastly, the parties also anticipated significant time and expenses dedicated to conducting a trial that may have lasted one or two days.

Plaintiff would have incurred expenses preparing exhibits and a hiring court-licensed translator for trial in addition to conducting the trial. Defendants would have also been required to dedicate significant time and money toward a trial which would have served as a distraction to operating their business. The settlement gives both parties peace of mind that they will not incur additional expenses and face an uncertain outcome at trial.

3.  **The seriousness of litigation risks faced by the parties:**

Both parties faced significant risks had they proceeded to trial in this matter.

Although Plaintiff was confident that she could succeed on all her claims, Plaintiff recognized the attendant risks of not prevailing at trial and not receiving any recovery. Plaintiff also could have recovered less than agreed-upon settlement at trial. Moreover, Plaintiff could have

obtained a judgment against Defendants at trial on which she could not collect. The seriousness of this risk favored a guaranteed payment through a Court-approved settlement for Plaintiff.

Defendants also faced the risk of losing at trial and not only having to pay any potential unpaid wages, liquidated damages and penalties to Plaintiff but also Plaintiff's counsel's reasonable attorneys' fees.

4. **Whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel":**

The parties engaged in extensive back-and-forth settlement discussion through a private mediator at a mediation held on June 26, 2024. The mediation lasted approximately 2 hours.

Plaintiff is represented by counsel who specialize in FLSA and NYLL matters and have settled hundreds of wage-and-hour cases in both New York state and federal courts. Defendants are also represented by counsel who specialize in FLSA and NYLL matters.

Further, the terms of the Settlement Agreement were the product of continued arm's-length bargaining between experienced counsel and has been carefully tailored to satisfy the criteria articulated for approval by Second Circuit courts.

5. **The possibility of fraud of collusion:**

Both parties are represented by experienced, competent counsel and the parties have maintained a professional relationship throughout the litigation. There is no possibility of fraud or collusion in this settlement.

II.     <u>**Requested Attorneys' Fees and Distribution to Plaintiff**</u>

The parties agreed to a global settlement of $18,500.00. If the Agreement is approved by the Court, Plaintiff will recover $11,878.00 after requested attorneys' fees and reimbursement of expenses.

Plaintiff's counsel respectfully requests $683.00 for identifiable expenses, which include:
- the Southern District of New York filing fee in this matter: $402.00
- the costs of service of the Summons and Complaint on all Defendants: $283.00, and

Plaintiff's counsel respectfully requests one-third of the settlement less their expenses ($17,817.00), or $5,939.00 in attorneys' fees, as agreed upon in the Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $6,622.00.

The settlement as broken down into its component parts is as follows:

**Settlement Amount:** $18,500.00
**Attorneys' Expenses:** $683.00

**Settlement less Expenses:** $17,817.00 ($18,500.00 - $683.00)
**Requested Attorneys' Fees:** $5,939.00 ($17,817.00 / 3)
**Total payable to Attorneys:** $6,622.00 ($5,939.00 + $683.00)
**Total payable to Plaintiff:** $11,878.00 ($18,500.00 - $6,622.00)

Plaintiff's attorneys and their client have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013).  Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.*, 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiff's counsel throughout the litigation of both matters and the recovery secured through their efforts. Plaintiff's counsel has zealously advocated for their client throughout the litigation and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff and the fee arrangement of one-third of the net settlement amount is regularly approved by courts in the Second Circuit.

## III.    Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of negotiations at a Court-annexed mediation and the terms of the Settlement Agreement comport with Second Circuit case law. As such, we respectfully request that the Court approve the Settlement. We thank the Court for its consideration and remain available to provide any additional information.

Respectfully submitted,

/s/

_____
Katelyn M. Schillaci, Esq.